**United States District Court**
**District of Massachusetts**

| | |
|---|---|
| _____ ) | |
| TIMOTHY CICHOCKI and Y. DOLLY ) | |
| HWANG, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| BANK OF AMERICA, VICKY R. ) | Civil Action No. |
| OLESKEY, ESTATE OF WALTER JUNG, ) | 15-13269-NMG |
| ELIZABETH C. McCAAN, ESTATE OF ) | |
| MARK KEISER, ROBERT D. RUSSO, ) | |
| DAVID FRYE, RUSSO AND SCOLNICK ) | |
| and 31 PINCKNEY STREET ) | |
| CONDOMINIUM TRUST AND ) | |
| ASSOCIATION, ) | |
| ) | |
| Defendants. ) | |
| _____ ) | |

**MEMORANDUM & ORDER**

GORTON, J.

This case arises from allegations that a mortgagee bank and several representatives of a condominium association fraudulently imposed special assessment fees against plaintiffs.

Pending before the Court are motions to dismiss by three sets of defendants and a motion for sanctions by one set of defendants. For the reasons that follow, the motions to dismiss will be allowed and the motion for sanctions will be denied.

I. **Background and procedural history**

Plaintiffs Timothy Cichocki ("Cichocki") and Y. Dolly Hwang ("Hwang") (collectively, "plaintiffs") are a married couple who

live at a condominium unit which they purchased at 31 Pinckney Street in Boston, Massachusetts.  They appear in this case pro se.

Defendant Bank of America ("Bank of America") is a banking and financial services company which loaned plaintiffs $270,000 secured by a 15-year mortgage.  Plaintiffs refinanced and executed a new 15-year mortgage in 2008.  They allege that Bank of America 1) misappropriated and transferred $6,452 in funds from their mortgage escrow account to the condominium association, 2) increased the amount of their monthly mortgage payments to cover the deduction of those funds and 3) attempted to foreclose on their property after they objected.

Defendant 31 Pinckney Street Condominium Trust & Association ("the Association") is the manager of the condominium units at 31 Pinckney Street.  Plaintiffs assert that it submitted a series of "false claim[s] of debt" to Bank of America for the purposes of extortion and retaliation.

Defendant Vicky Oleskey ("Oleskey") is a member of the Association who served for "almost three decades" as its secretary and treasurer.  She allegedly conspired with the Association to lodge "false claims of debt" against plaintiffs.

Walter Jung was a member of the Association and its treasurer until 2009.  He died in 2011 and his estate ("Jung") has been named as a defendant in this action.

-2-

Defendant Elizabeth McCaan ("McCaan") is the co-owner of multiple condominium units at 31 Pinckney Street and the current treasurer of the Association.  Plaintiffs claim that she worked with Oleskey and an attorney, on behalf of the Association, to assess falsely claimed debts from plaintiffs' account with Bank of America.

Mark Keiser was married to McCaan and co-owned condominium units with her before his death in 2014.  His estate ("Keiser") has also been named as a defendant.

Defendant Russo & Scolnick ("the law firm") is the Massachusetts law firm representing Oleskey, McCann and the Association in Massachusetts Housing Court.  Plaintiffs claim that the law firm filed false claims against them in the housing court and acted as a "collection agent" for the Association, all for the purpose of extortion.

Defendant Robert Russo ("Attorney Russo") is a partner at the law firm who allegedly filed the false claims against plaintiffs in the housing court.

Defendant David Frye ("Attorney Frye"), whom the complaint purportedly misidentifies as "Davis Frye", is an attorney who allegedly assisted with the filing of the false claims and made false representations in the housing court.

Plaintiffs initiated this action in September, 2015 by filing a complaint alleging various violations of federal law,

Massachusetts law, the Uniform Commercial Code and a Consent Judgment of another federal district court.

The law firm and Attorneys Russo and Frye (collectively, "the attorney defendants") moved to dismiss the claims against them in December, 2015.  Oleskey, Jung, McCaan, Keiser and the Association (collectively, "the condominium defendants") moved for dismissal of the claims against them, and for sanctions against plaintiffs, in January, 2016.  Bank of America moved to dismiss the claims against it shortly thereafter.

## II.  **Bank of America's motion to dismiss**

### A.  **Legal standard**

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The court may consider documents incorporated by reference, matters of public record and other matters subject to judicial notice. Giragosian v. Ryan, 547 F.3d 59, 65 (1st Cir. 2008).  In assessing the merits of the motion, the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. Santiago v. Puerto Rico, 655 F.3d 61, 72 (1st Cir. 2011).  Threadbare recitals of the legal elements, supported by mere conclusory

statements, do not suffice to state a cause of action. Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

### B. Application

#### 1. Res judicata

Under the doctrine of res judicata, a final judgment on the merits of a previously filed action precludes the parties from re-litigating issues that were, or could have been, raised in the prior action. Perez v. Volvo Car Corp., 247 F.3d 303, 311 (1st Cir. 2001). The doctrine applies if there is 1) a final judgment on the merits in the earlier action, 2) "sufficient identicality" between the causes of action asserted in the earlier and later actions and 3) "sufficient identicality" between the parties in the two actions. Id. A dismissal of all claims in the prior action for failure to state a claim constitutes a final judgment on the merits for such purposes. AVX Corp. v. Cabot Corp., 424 F.3d 28, 30-32 (1st Cir. 2005).

The First Circuit Court of Appeals ("the First Circuit") adopts a broad "transactional" approach to the term "cause of action" which it defines as

> embrac[ing] all rights of the plaintiff to remedies against the defendant with respect to all or any part of the transaction, or series of connected transactions, out of which the action arose.

United States v. Cunan, 156 F.3d 110, 114 (1st Cir. 1998) (internal quotation marks omitted).

A review of the pleadings in the public record confirms that res judicata prevents plaintiffs from asserting their claims against Bank of America in this action.

In 2012, plaintiffs initiated an action in this Court against Bank of America alleging that it made an unauthorized payment of $6,452 from plaintiffs' mortgage escrow account to the Association to satisfy an alleged debt, refused to assist plaintiffs' challenge of the validity of that debt and instead increased the monthly mortgage payments to reflect it. Cichocki v. Bank of Am., 2013 WL 6859027, at *2 (D. Mass. June 24, 2013). This Court dismissed that initial complaint without prejudice and, six months later, dismissed a "nearly identical" amended complaint without prejudice. Id. at *2-3.  Those dismissals were based upon plaintiffs' continuing failure to comply with Fed. R. Civ. P. 8 and 10. Id. at *7.

Instead of appealing the dismissals of the initial and first amended complaints, plaintiffs filed a second amended complaint which, after this Court accepted and adopted the recommendation of a magistrate judge, was dismissed with prejudice for failure to state a claim under Rule 12(b)(6). Id. The Court expressly found that the dismissal was "a final decision on the merits, and is thus with prejudice", id., after which it terminated the 2012 case.

Plaintiffs appealed the dismissal of the second amended complaint to the First Circuit which affirmed the dismissal in December, 2014 for the reasons set forth in the accepted and adopted report and recommendation.  Undeterred, plaintiffs moved for a third time to amend their complaint in the 2012 action. That motion was denied as moot in June, 2015 and, three months later, plaintiffs commenced the instant action against Bank of America and other newly named defendants with the concession that it was "a refile of amended complaints first filed [in the 2012 case]".

The Court finds that plaintiffs' claims against Bank of America in the 2012 action and in the instant action arise from the same alleged transactions and are thus based upon sufficiently identical causes of action.  The claims in the prior action were dismissed with prejudice in a final judgment on the merits.  The doctrine of <u>res judicata</u>, therefore, bars all of plaintiffs' claims against Bank of America in the instant action.  The Court declines to consider the other arguments for dismissal because its initial decision is dispositive. Accordingly, the motion to dismiss by Bank of America will be allowed and the claims against it will be dismissed.

## III. <u>The attorney defendants' motion to dismiss</u>

The complaint alleges that the attorney defendants violated various federal and state criminal statutes by engaging in

fraud, obstruction of justice, extortion, "assaults upon property rights" and a conspiracy to commit fraud. Specifically, the complaint claims violations of 18 U.S.C. §§ 873, 1018, 1028(7), 1343, 1344(2) and 1503 and M.G.L. c. 267 §§ 1 and 5.

Plaintiffs know full well from their previous litigious endeavors, however, that private citizens do not have standing to prosecute criminal violations or to initiate criminal proceedings in their own names. Cichocki v. Mass. Bay Cmty. Coll., 2013 WL 783068, at *6, 7 (D. Mass. Feb. 28, 2013). Their attempt to bring criminal claims will be dismissed with prejudice.

Count 7 of the complaint asserts a claim under the Massachusetts Civil Rights Act ("MCRA"), M.G.L. c. 12, § 11I. To survive dismissal, an MCRA claim must allege 1) the exercise or enjoyment of rights secured by the federal or state constitutions or laws and 2) interference or attempted interference with those rights 3) by "threats, intimidation, or coercion." Haufler v. Zotos, 446 Mass. 489, 504 (2006).

The sparse references to the attorney defendants in the complaint contain no factual allegations of threatening, intimidating or coercive behavior. Plaintiffs claim that the attorney defendants helped the condominium defendants to file false claims in court under "assumed identities" and to collect extortionate payments from Bank of America. Plaintiffs assert

-8-

that Attorney Frye made false representations in court and also informed them of the intent of the Association to place a lien against their property.  None of those assertions, even if taken as true, allege that the attorney defendants engaged in threats, intimidation or coercion.  Count 7 will be dismissed for failure to state a claim.

The complaint further fails to allege sufficient facts to support a claim against the attorney defendants under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961, et seq.  That is because the portions of the complaint containing RICO-related allegations concern the condominium defendants and refer to the attorney defendants only to provide context.

Accordingly, the motion to dismiss by the attorney defendants will be allowed in its entirety and the claims against them will be dismissed.

## IV.  The condominium defendants' motion to dismiss and motion for sanctions

### A.  Motion to dismiss

#### 1.  Criminal claims

Counts 1, 2, 4, 5, 8 and 9 allege that the condominium defendants engaged in fraudulent, extortionate, assault-related and conspiratorial conduct in violation of the following federal and state criminal statutes: 18 U.S.C. §§ 876(a), 873, 1018,

1028(7), 1343, 1344(2) and 1503; M.G.L. c. 265, § 13A and M.G.L. c. 267, §§ 1 and 5.

Those claims will be dismissed with prejudice because, as explained above, plaintiffs do not have standing to prosecute criminal violations or to initiate criminal proceedings in their own names. Mass. Bay Cmty. Coll., 2013 WL 783068, at *6, 7.

### 2.   Count 3

Count 3 purports to raise a claim of "attempted house invasion and assault on property" by asserting that Oleskey and McCann conspired with the Association to "invade" plaintiffs' condominium unit and conduct a maintenance inspection in order to collect evidence to use against plaintiffs in court.  The complaint asserts that in September, 2014, 1) a man pretending to be a firefighter convinced Hwang to let him into plaintiffs' condominium, 2) a second man claiming to be the maintenance manager approached the front door and asked to inspect the unit and 3) a third man requested that Hwang let him in to inspect the bathroom.  Hwang claims that she became suspicious and demanded that all three men leave immediately and that the second man said, as he was leaving, that Oleskey had sent him.

The Court construes Count 3 as a claim of conspiracy to commit civil trespass.  A claim for civil conspiracy under Massachusetts law requires 1) a common design or agreement between two or more parties to perform a wrongful act and 2) a

-10-

tortious act in furtherance of the agreement. <u>Aetna Cas. Sur.
Co.</u> v. <u>P & B Autobody</u>, 43 F.3d 1546, 1564-65 (1st Cir. 1994).  A
claim for civil trespass must establish 1) actual possession of
the property by plaintiffs, 2) intentional entry and 3) unlawful
entry. <u>Walker</u> v. <u>Jackson</u>, 56 F. Supp. 3d 89, 95 (D. Mass.
2014)(citing <u>New England Box Co.</u> v. <u>C & R Const. Co.</u>, 313 Mass.
696, 707 (1943)).

   Count 3 fails to state such a claim.  The complaint merely
asserts that three men attempted to enter plaintiffs'
condominium unit and that one of them claimed to do so pursuant
to authorization by Oleskey.  There is no specific factual
allegation that Oleskey, McCann and/or the Association reached
an agreement to send the three men to plaintiffs' condominium in
order to collect evidence or that either defendant committed a
tortious act in furtherance of such a plan.

   Accordingly, Count 3 will be dismissed.

### 3.   Count 6

   Count 6 alleges that the condominium defendants
fraudulently admitted new members to the Association and new
occupants to the building which endangered the lives and
property of plaintiffs.  Defendants purportedly violated the
bylaws and past practice of the Association when they 1) failed
to notify, and seek approval from, the members of the
Association with respect to the new applicants, 2) deliberately

concealed the existence of the new applicants and their applications and 3) deceptively admitted the new owners and renters.  The complaint claims that such conduct was "fraudulent in the eye of the association by law and established practice".

The Court construes Count 6 as a breach of contract claim. A breach of contract must allege 1) the existence of a contract, 2) plaintiffs' performance or willingness to perform under the contract, 3) breach by the defendants and 4) if plaintiffs seek damages, causation and the amount of damages. Amicas, Inc. v. GMG Health Sys., Ltd., 676 F.3d 227, 231 (1st Cir. 2012).

Count 6 fails to state a contract claim.  As an initial matter, the complaint does not allege the existence of a contract between plaintiffs and the individual defendants.  The references to the bylaws and past practice of the Association can, at most, be construed as a contract between plaintiffs, who purport to be members of the Association, and the Association but not between plaintiffs and Oleskey, McCaan, Jung or Keiser. In any event, there are no specific factual allegations with respect to any of the condominium defendants that plaintiffs complied, or were willing to comply, with any contractual obligations of theirs to review and approve new applications. With respect to the claimed amount of damages, plaintiffs submit only vague, conclusory allegations that defendants' conduct

"disastrously" affected their property interests and "gravely threatened" Hwang's life and safety.

Accordingly, Count 6 will be dismissed.

### 4.   Count 7

Count 7 purports to raise an MCRA claim against the Association, Oleskey and McCaan.  As discussed, an MCRA claim must allege 1) the exercise or enjoyment of rights secured by the federal or state constitutions or laws and 2) interference or attempted interference with those rights 3) by "threats, intimidation, or coercion." Haufler, 446 Mass. at 504.

Plaintiffs allege that defendants interfered with their 1) "Constitutional rights to life, liberty, happiness, [and] property", 2) right to "feel secure [at] home" without living in fear, 3) right to be free from unlawful prosecution by the Association and its members, 4) right to equal treatment as condominium owners and 5) contractual "ownership rights" to their condominium unit.  In support, plaintiffs claim that defendants targeted them for bullying and "prosecutions", blamed them for building-related problems, assigned most of the building expenses to them and barred them from voicing their concerns.

The MCRA claim will be dismissed with respect to the first four asserted rights because there is no specific allegation that those rights are protected by federal or state

-13-

constitutions or laws.  The mere inclusion of the phrase
"Constitutional rights to life, liberty, happiness, [and]
property" does not suffice to establish a constitutionally-
protected right.  There is no attempt by plaintiffs to allege
that they have a federal or state right to live in their
condominium unit without fear or to avoid housing-related
litigation.  Conclusory allegations that plaintiffs "were
stripped of all equal rights with their fellow owners" do not,
by themselves, satisfy the first element of an MCRA claim.

The portion of the MCRA claim addressing plaintiffs'
contract rights will also be dismissed for failure to state a
claim.  Plaintiffs do not allege that the contract providing
them with "ownership rights" also protects them against
bullying, prosecution, unequal treatment and feelings of
fearfulness.  They do not allege the existence of a separate
contract protecting them against the alleged misconduct.   The
Court cannot plausibly infer that the asserted rights are
contract rights protected by Massachusetts law.

Accordingly, the MCRA claim against the condominium
defendants will be dismissed.

### 5.   Civil RICO claim

The Court will construe the complaint as purporting to
assert civil RICO violations, based upon an "open-ended" pattern

-14-

of racketeering activity, pursuant to 18 U.S.C. § 1962(c)

against Oleskey, Jung, McCaan and Keiser.

### a.   Elements of a RICO claim

The RICO statute provides a private right of action for

plaintiffs "injured in [their] business or property by reason of

a violation of section 1962" of the statute. 18 U.S.C.

§ 1964(c).  A civil RICO claim must allege 1) conduct 2) of an

enterprise 3) through either a pattern of racketeering activity

or the single collection of an unlawful debt. Home Orthopedics

Corp. v. Rodriguez, 781 F.3d 521, 528 (1st Cir. 2015).

The statute defines "racketeering activity" to include

criminal acts of extortion, mail fraud, wire fraud and financial

institution fraud. 18 U.S.C. § 1961(1).  A pattern of

racketeering activity requires at least two acts of racketeering

occurring within ten years. 18 U.S.C. § 1961(5).  The predicate

acts must be related and amount to, or pose a threat of,

continued criminal activity. Home Orthopedics, 781 F.3d at 528.

Continuity requires either a "closed period of repeated conduct

[amounting to] continued criminal activity" or, under the "open-

ended" approach, "past conduct that by its nature projects into

the future with a threat of repetition". Id.

### b.   Alleged racketeering activities

Plaintiffs allege that Oleskey and Jung, in their

capacities as the Association secretary and treasurer,

-15-

coordinated their activities for decades to reinforce their own power, to exclude plaintiffs from participating in the Association and to turn the other members against plaintiffs. Oleskey and Jung purportedly made plaintiffs public targets for harassment, intimidation and retaliation in order to punish plaintiffs for complaining about Oleskey's use of marijuana and Jung's accounting practices.

Against that backdrop, plaintiffs allege the following instances of racketeering activity:

At some point after 2004, Oleskey and Jung billed plaintiffs for the costs of installing a new pipe in another unit and, through an attorney, initiated a "false debt claim" for that expense and other bogus expenses.  The attorney purportedly convinced Bank of America to transfer funds from plaintiffs' account, without their permission, to satisfy those debts.

In 2010, Oleskey allowed a new tenant to move into Unit 3 without completing the application process.  That tenant attempted to enter plaintiffs' condominium without permission. Plaintiffs believe that "someone had been into their unit regularly while they were out" in order to commit identity fraud against them.  Oleskey refused their requests to change the locks to the front door of the building.

McCaan and Keiser moved into Unit 3 in 2011 and used Association funds to renovate their unit.  In December, 2013, Keiser hired a construction crew to repair a broken skylight and repaint the walls of the building.  The loud noises and dust from the construction bothered plaintiffs.  The construction also caused plaintiffs to lose heat to their apartment.  Keiser initiated an action against them in the housing court for refusing to let the construction continue.

In September, 2014, three men posed as a firefighter and two maintenance workers in attempts to enter plaintiffs' condominium.  Plaintiffs claim that at least one of them acted pursuant to Oleskey's orders.

Shortly thereafter Hwang refused Oleskey's request to allow a plumber to enter plaintiffs' unit.  Oleskey allegedly responded by initiating a lawsuit against plaintiffs under false pretenses.  Oleskey and McCaan purportedly made false statements in court.

In October, 2014, plaintiffs inspected the land records and discovered that McCaan and Keiser, who plaintiffs believed had misused Association funds, had "secretly" become the new owners of Unit 1.  Plaintiffs ceased making their monthly payments of Association fees.  Two months later, the Association delivered debt collection letters to plaintiffs.

### c. Findings by the court

The Court finds that the alleged acts, even if each individual act qualifies as a RICO predicate, do not satisfy the continuity requirement.

The First Circuit requires predicate acts to be related and amount to, or pose a threat of, continued criminal activity. Home Orthopedics, 781 F.3d at 528. Under the open-ended approach, plaintiffs must show that

> the racketeering acts themselves include a specific threat of repetition extending indefinitely into the future [or] . . . are part of an ongoing entity's regular way of doing business.

Feinstein v. Resolution Trust Corp., 942 F.2d 34, 45 (1st Cir. 1991).

Plaintiffs' allegations that the condominium defendants' actions resulted in falsely incurred debts do not satisfy that standard. There is no specific threat of repetition because the parties are currently litigating the validity of those debts in state court. Any threat presented by the debt collection efforts of the condominium defendants will dissipate once the claims are resolved in state court. Any threat arising from defendants' purported misconduct in state court will also cease once the state proceedings are resolved. Furthermore, the sporadic and substantively distinct nature of the identified debt-related incidents precludes a plausible inference that

lodging false claims of debt are part of the Association's "regular way of doing business". See id.

The allegations with respect to the unauthorized entries into plaintiffs' condominium unit and the construction fare no better.  The complaint claims that 1) in 2010, an individual other than a named defendant attempted to enter the unit, 2) in 2011, Keiser hired a construction crew to perform repairs which caused plaintiffs to suffer loud noises, dust and loss of heat in their unit and 3) in 2014, three men attempted to enter the unit pursuant to Oleskey's orders.  That complaint, even when construed liberally, does not sufficiently allege that those three acts, which occurred over a period of many years and were performed by different individuals under unrelated circumstances, presented a specific threat of repetition or were part of the Association's "regular way of doing business". See id.

Accordingly, the complaint fails to state a viable RICO claim and the motion to dismiss the RICO claims will be allowed.

### B.   Motion for sanctions

The condominium defendants seek an award of attorney's fees to sanction plaintiffs for abusing the judicial process in bad faith given plaintiffs' 1) "history of pursuing spurious claims as pro se litigants" and 2) decision to "refile" their

previously dismissed claims here in federal court rather than to contest the debt claims against them in state court.

The Court declines to impose sanctions at this time.  It forewarns plaintiffs, however, that they may be subject to sanctions if they attempt to resurrect the dismissed claims, either through a motion to amend the complaint in this case or a "refiled" complaint in another case, against the condominium defendants based upon the same alleged conduct.

### ORDER

For the foregoing reasons,

1)    the motion to dismiss by defendants David Frye, Robert Russo and Russo & Scolnick (Docket No. 6) is **ALLOWED,**

2)    the motion to dismiss and motion for sanctions by defendants 31 Pinckney Street Condominium Trust & Association, Estate of Mark Keiser, Estate of Walter Jung, Elizabeth McCaan and Vicky Oleskey (Docket No. 20) is, with respect to dismissal, **ALLOWED** but is, with respect to sanctions, **DENIED** and

3)    the motion to dismiss by defendant Bank of America (Docket No. 23) is **ALLOWED.**

Plaintiffs are forewarned that they may be subject to sanctions if they attempt to raise or re-litigate their dismissed claims,

either in this case or another case, against the condominium

defendants for the same alleged conduct.


**So ordered.**


/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated July 21, 2016